**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

IN RE:   **CITY OF BRYANT, ARKANSAS MUNICIPAL**   **Case No. 4:17-bk-16800**
**PROPERTY OWNERS' MULTIPURPOSE**   **Chapter 9**
**IMPROVEMENT DISTRICT NO. 84**

## AMENDED PLAN OF DEBT ADJUSTMENT

City of Bryant, Arkansas Municipal Property Owners' Multipurpose Improvement District No. 84 (Midtown Project) ("Debtor" or "District"), proposes the following Plan for the adjustment of its debts pursuant to Chapter 9 of the Bankruptcy Code ("Plan"). ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT, WHICH HAS BEEN APPROVED BY THE BANKRUPTCY COURT, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**BANKRUPTCY RULE 3016 NOTICE OF RELEASES AND INJUNCTIONS**
**PROVIDED FOR IN THE PLAN ARE SET FORTH IN ARTICLE IX OF THE PLAN**

## BANKRUPTCY RULE 3016 NOTICE OF RELEASES AND INJUNCTIONS CONTAINED IN THE PLAN

THE PLAN PROVIDES FOR RELEASES OF AND INJUNCTIVE RELIEF TO CERTAIN PERSONS AND ENTITIES PROVIDING SUBSTANTIAL CONSIDERATION TO THE ESTATE. THE SCOPE OF THE RELEASES AND INJUNCTIONS, AND THE PERSONS TO WHOM SUCH PROTECTION IS BEING PROVIDED, ARE FULLY DESCRIBED IN ARTICLE IX OF THIS PLAN. IF THE PLAN IS CONFIRMED, ALL PERSONS IDENTIFIED IN SUCH PROVISIONS OF ARTICLE IX WILL BE RELEASED FROM THE CLAIMS AND CAUSES OF ACTION OF ANY CREDITOR OR PARTY IN INTEREST IN THIS CASE, WHETHER OR NOT SUCH CREDITOR OR PARTY IN INTEREST VOTED ON THE PLAN.

EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, FROM AND AFTER THE EFFECTIVE DATE, ANY AND ALL POTENTIAL CLAIMANTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION, OR OTHER PROCEEDING, AGAINST ANY ONE OR MORE OF THE DEBTOR OR ANY PARTIES IDENTIFIED IN ARTICLE IX, ON ACCOUNT OF OR IN RESPECT TO ANY CLAIM, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, REMEDY, OR LIABILITY, OR ANY OTHER CLAIM, RELEASED PURSUANT TO THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

The Plan permanently enjoins the commencement or prosecution by any person or entity, whether directly, indirectly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to the Plan, against any one or more of the parties identified in Article IX of the Plan ("Plan Releasees"), except for secured creditors and bond holders. Therefore, all parties having a claim arising prior to the Effective Date of the Plan against the Debtor or any Plan Releasee shall, with respect thereto, be enjoined from and after the Effective Date, from the following:

- Commencing, conducting, or continuing in any manner, whether directly, indirectly, derivatively, or otherwise, any suit, action, or other proceeding of any kind against any Plan Releasees, or the direct or indirect successor in interest thereof, including, without limitation, all suits, actions, and proceedings that are pending, or may be filed as of the Effective Date, which must be withdrawn or dismissed with prejudice to refile;
- Enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any Plan Releasee, or the direct or indirect successor in interest thereof, or against any asset or property of any of them, except as otherwise provided in Article VII;
- Creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, a lien against any Plan Releasee, or the direct or indirect successor in interest thereof, or against any asset or property of any of them;
- Asserting any claim or right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any Plan Releasee, or the direct or indirect successor in interest thereof, or against any asset or property of any of them; and
- Proceeding in any manner that does not conform to or comply with the provisions of

*City of Bryant, Arkansas Municipal Property Owners' Multipurpose*
*Improvement District No. 84 (Midtown Project)*
CHAPTER 9 PLAN OF ADJUSTMENT   2

the Plan.

All inunctions or stays in effect on the Confirmation Date, whether existing by operation of law, or by order of the Court, provided for in this case, including but not limited to those under Sections 105, 362, or 524 of the Bankruptcy Code, shall remain in full force and effect until the entry of the Final Decree.

# ARTICLE I.
## Definitions

1.01    **"Administrative Claim"** means a claim specified in § 507(a)(l) of the Code.

1.02    **"Allowed Claim"** means any Claim in the amount and classification set forth in a Proof Claim timely filed with the Court, or in the absence of such filing, unless the Claim was listed by the Debtor in its List of Creditors as disputed, contingent, or unliquidated, in any event as to which no objection to the allowance thereof has been timely asserted under the Plan or Confirmation Order, or as to which any timely objection has been determined by an order of the Court providing for allowance thereof. Multiple claims in the same Class held by a Creditor or Proofs of Claim filed by a Creditor shall be aggregated and constitute a single Claim.

1.03    **"Allowed General Unsecured Claim"** means a claim that is an allowed claim that is not secured by any lien on property of the Debtor.

1.04    **"Allowed Secured Claim"** means any allowed claim that is secured by a lien on the property of the Debtor.

1.05    **"Bankruptcy Code" or "Code"** means the provisions of Title 11 of the United States Code.

1.06    **"Bankruptcy Rules" or "Rules"** means the Federal Rules of Bankruptcy Procedure.

1.07    **"Board of Commissioners"** means the duly appointed commissioners and governing body of the District.

1.08    **"Bonds"** means the Series 2008-A for Five Million Three Hundred Fifty Thousand Dollars ($5,350,000) and Series 2008-B for Seven Hundred Sixty Thousand Dollars ($760,000) issued by the District in the Original aggregate principal amount of Six Million One Hundred Ten Thousand Dollars ($6,110,000).

1.09    **"Bondholders"** means the owners of the Series 2007-A and Series 2007-B Bonds issued by the District.

1.10    **"Bond Trustee"** shall mean Bank OZK, or any successor thereto.

1.11    **"Cause(s) of Action"** means any claim, remedy, obligation, suit, judgment, award of damages, demand, right, cause of action, and/or liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or thereafter arising, in law, at equity, or otherwise, which are based in whole or in any part on any act, omission, transaction, or occurrence taking place on or prior to the Effective Date, including the Litigation.

1.12    **"Claim(s)"** has the meaning set forth in Section 101(5) of the Code, whether or not asserted in this case, and shall include, but not be limited to, Causes of Action. "Claims" may also be referred to in the Plan as "Debts," which shall have the same meaning.

1.13    **"Claimant"** means the holder of an allowed secured or unsecured claim.

1.14    **"Commissioners"** means the governing body of the District, presently consisting of Graham Smith, Scott Hurley, and Walter "Butch" Lomax.

1.15    **"District"** means the Debtor, City of Bryant, Arkansas Municipal Property Owners' Multipurpose Improvement District No. 84 (Midtown Project).

1.16    **"Effective Date"** means eleven (11) days after the Order of Confirmation has been entered upon the Court's docket without Notice of Appeal.

1.17    **"Impaired"** has the meaning provided in § 101 of the Code.

1.18    **"Litigation"** includes Foreclosure Litigation and Streets Litigation, which shall

each have the meaning set forth in Article III of the Disclosure Statement.

1.19     **"Lot(s)"** means, generally, Platted Improved Lots, and Unimproved Land.

1.20     **"Net Proceeds"** means the proceeds net of the costs of sale for any Lot or parcel, including unpaid taxes, brokerage commissions, and other expenses as are customary in a non-bankruptcy real estate sale, such as title insurance, recording fees, tax stamps, closing charges, document preparation fees, and the like.

1.21     **"Order of Confirmation"** means the Order of the Court Confirming the Debtor's Plan pursuant to § 1129 of the Code.

1.22     **"Petition Date"** means the date on which the Debtor filed its Chapter 9 Petition, December 21, 2017.

1.23     **"Plan"** means the Debtor's Plan of Debt Adjustment as it may be amended.

1.24     **"Platted Improved Lots"** means, collectively, the sixty-one (61) lots in Phase I of the District, and the twenty-four (24) lots in Phase II of the District upon which site preparation has been completed, which are considered ready for development and not implicated in the pending appeal of the foreclosure litigation.

1.25     **"Unclaimed Distributions"** means any and all distributions pursuant to the Plan that not claimed within one (1) year following the date of such distribution. Unclaimed Distributions shall include (a) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (b) funds for checks that have not been paid, (c) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to direct or deliver same, and (d) interest on cash constituting Unclaimed Distributions.

1.26     **"Unimproved Land"** means the unplatted raw land within the District, the total acreage of which is subject to determination in the Foreclosure Litigation.

## ARTICLE II.
### Construction

2.01     Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used in the Plan shall have the meanings provided in the Code or the Bankruptcy Rules.

2.02     Headings, titles, and captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

2.03     The first letters of terms defined in the Plan are capitalized.

## ARTICLE III.
### General Terms and Conditions

The following general terms and conditions shall apply to the Plan:

3.01     To the extent that any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the Debtor may either (a) reserve and segregate funds sufficient to provide for each of such Claim under the Plan, (b) as the Court to determine an appropriate reserve amount, or (c) as the Court to estimate for purposes of allowance, any contingent or unliquidated Claim that would otherwise delay the administration of this chapter 9 case.

*City of Bryant, Arkansas Municipal Property Owners' Multipurpose*
*Improvement District No. 84 (Midtown Project)*
CHAPTER 9 PLAN OF ADJUSTMENT   5

3.02     Pursuant to §§ 901(a) and 1122(a) of the Code, Article V of the Plan designates three (3) Classes of Claims. As set forth below, Claims of the kind specified in § 507(a)(2) of the Code have not been classified, and are excluded from those set forth in Article V of the Plan, in accordance with § 1123(a)(1) of the Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and shall be deemed classified in a similar Class, to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class. Multiple Proofs of Claim filed by a Creditor, if any, that qualify for inclusion within the same Class, shall be aggregated, and if allowed, shall constitute a single Allowed Claim.

## ARTICLE IV.
### Administrative Claims

4.01     The holders of Administrative Claims shall receive on account of such Claims payment(s) in the amount of such Claims as set forth herein and as provided in 11 U.S.C. 503. Administrative Claims for fees and/or costs or professionals employed by the District described in Section 4.02, shall be paid on or before the Effective Date of the Plan or as soon thereafter as is reasonably practicable. Notwithstanding the foregoing, Administrative Claims incurred by the Debtor in the ordinary course of business shall be paid in accordance with the applicable ordinary business terms.

4.02     Bankruptcy Counsel for the District, Williams & Anderson PLC, estimates total fees for their services herein will be $25,000.00. Litigation Counsel for the District, Eilbott Law – Don Eilbott, Attorney, will be $30,000.00. Additional Administrative Claims include certain fees incurred by the Bond Trustee and its counsel after the commencement of the Debtor's case. Additional court costs of these proceedings, if any, will also be paid as Administrative Claims.

4.03     Excepting Administrative Claims for fees and/or costs of professionals employed by the District, and Administrative Claims incurred in the ordinary course of Debtor's business, any party seeking payment of an Administrative Claim must file a request of payment with the Clerk of Court on or before thirty (30) days after the Confirmation Date.

## ARTICLE V.
### Designation of Classes of Claims

5.01     **Class 1 (Bondholders).**   Class 1 includes the Claims of all beneficial owners of the outstanding 2008 Bonds, as of the date that the Court approves the District's Disclosure Statement, filed contemporaneously herewith. On February 12, 2008, the District closed two series of tax-exempt bonds in the aggregate principal amount of $6,110,000 ($5,350,000 Series 2008-A and $760,000 Series 2008-B) (together, the "Bonds"). Series 2008-A Bonds in the principal amount of $4,570,000.00 remain unpaid. Series 2008-B Bonds in the principal amount of $590,000.00 remain unpaid. Total unpaid interest on the Bonds as of the Petition Date is $1,189,426.39.

5.02     **Class 2 (Real Property / Ad Valorem Taxes).**   The claims of the Saline County Tax Collector for any unpaid ad valorem taxes owed, or claims related thereto, on the Foreclosed Property owned by the District.

5.03     **Class 3 (Secured Claims of the City of Bryant).**   The Claims of the City of Bryant for fees assessed for mowing District Property, in the total amount of $12,228.00. Debtor

does not dispute the claim for mowing services. It is not expected that this Class will receive any distribution under the Plan.

## ARTICLE VI.
### Treatment of Unimpaired Classes Under the Plan

6.01     **Class 2 (Real Property / Ad Valorem Taxes).**     Class 2 is not impaired under the Plan. These taxes shall have the priority set forth in § 507(a)(8)(B) of the Code. Delinquent ad valorem taxes, together with penalties and interest, for each parcel will be paid in full at each closing. The Plan leaves unaltered the legal, equitable, and contractual rights of the holders of Class 2 Claims.

## ARTICLE VII.
### Treatment of Impaired Classes Under the Plan

7.01     **Class 1 (Bondholders).**     Class 1 is an Impaired Class under the Plan, and shall be treated in accordance with the terms stated below. The Debtor will solicit acceptances of the Plan from the Impaired Class. .

7.02     **Class 3 (Secured Claims of the City of Bryant).**     Class 3 is an Impaired Class under the Plan, and shall be treated in accordance with the terms stated below. The Debtor will solicit acceptances of the Plan from the Impaired Class. After Class 1 is paid in full, from the proceeds of the sale of lots and land. Class 3 will be paid as an ordinary operating expense of the Debtor from the net proceeds from the sale of property.

7.03     **Cramdown.**     In the event that a Class entitled to vote on the Plan shall fail to accept the Plan in accordance with §§ 901(a) and 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan in accordance with § 1129(b).

## ARTICLE VIII.
### Means of Implementation of the Plan

8.01     **Implementation of the Plan.**     The Commissioners of the District are authorized and directed to take all necessary or appropriate action under state and other applicable law to implement the Plan.

8.02     **Funding the Plan.**     The Plan will be funded using District funds on hand as of the Effective Date of the Plan, along with revenue from the sale of the Foreclosed Property

8.03     **Plan Implementation.**     Debtor will market and promote the sale of the Foreclosed Property in stages, in order to obtain the maximum value for the Foreclosed Property, and to allow implementation of the Plan to commence prior to the resolution of the Litigation. Nothing in this Section 8.03 should be construed as prohibiting the Debtor from receiving, considering, or accepting offers to purchase all or any portion of the Foreclosed Property prior to marketing same under the Plan.

(a)   Sale of Platted Improved Lots – The Platted Improved Lots, collectively, are not implicated in the Litigation, and as such, can be immediately marketed and sold free and clear of liens or other encumbrances at the stated release price unless otherwise agreed. As described in attached Exhibit C. The Debtor will enter into a Listing Agreement with Arkansas Land & Realty ("AL&R") to market the

Platted Improved Lots for sale to the public, consistent with the Release Price. Lots

(b)  <u>Sale of Unimproved Land</u> – Upon a full and final determination of the Debtor's rights in and to the Unimproved Land in the Foreclosure Litigation, the District will enter into a Listing Agreement with AL&R to market its entire interest in and to the Unimproved Land for sale to the public, at or above the stated release price at a fair market per-acre value, consistent with the Release Price.

(c)  <u>Winding Up Affairs of the District.</u> If the Foreclosed Property has not been liquidated after six (6) years from the confirmation date of the Amended Plan the District shall auction the remaining property and wind up its affairs pursuant to A.C.A. 4-32-101, *et seq.*

8.04    **Use of Net Proceeds from Sale of Foreclosed Property.**   Upon the sale of any lot or parcel of the Foreclosed Property, which must be at or above the release price unless otherwise agreed, the District shall receive the Net Proceeds of such sale, which shall be used first to pay the standard and customary operating expenses of the District, including the reasonable fees of professionals hired by the District, including those classified as Administrative Claims in Article IV, above, and the secured claims of the City of Bryant, shall remit the funds in excess of such operating expenses to the Bond Trustee for pro rata distribution to the Bondholders, in accordance with the Trust Indenture.

8.05    **Unclaimed Distributions.**   Unclaimed Distributions shall be retained by the Bond Trustee for redistribution in accordance with the terms of the Trust Indenture.

8.06    **Post-Confirmation Operations.**   The District will continue to exist post-Confirmation for the purpose of selling the Foreclosed Property, collecting Special Taxes, if any, and making disbursements to the Bond Trustee in accordance with the Plan. Upon completing all disbursements authorized under the Plan, the Commissioners shall wind up the affairs of the District in accordance with applicable Arkansas law.

8.07    **Execution and Delivery of Documents.**   The Debtor is authorized to make, execute, deliver, and record such documents and instruments as are necessary or appropriate to promote and implement the Plan, or to carry out its purposes.

8.08    **Objections to Claims or Interests.**   Any objection to any Claim shall be on or before the thirtieth (30th) day after the Effective Date. This time period may be extended by the Court upon the request of the Debtor. The Debtor is unaware of any contested claims, other than such as may arise under the Foreclosure Litigation or the Streets Litigation.

8.09    **Retention and Enforcement of Claims.**   Pursuant to §§ 901(a) and 1123(b)(3) of the Code, the Debtor may maintain and enforce any claims and/or rights of the Debtor. Debtor is not presently aware of any such claims or rights to be asserted.

8.10    **Court Fees.**   On or before the Effective Date, any fees due from the Debtor to the Clerk of Court shall be paid in full.

8.11    **Assumption of Executory Contracts and Unexpired Leases.**   The Debtor as "successor" by foreclosure to the developer is a party to two (2) executory contracts. These are "Declaration of Governance, Covenants, Easements, Conditions and Restrictions" for Midtown Bryant "Bill of Assurance) filed with the Circuit Clerk of Saline County, Arkansas, October 2, 2008 and the Bryant Traditional Neighborhood Development Overlay District ("Overlay District") as adopted by Ordinance 2010-02 of the City of Bryant, Arkansas.  By their terms, these may be modified or rejected in whole or in part at any time by the Debtor or successor to the Developer.  This right is retained by the Debtor consistent

with any assumption of the executory contracts.  The Debtor assumes in their entirety the executory contract as set forth above.

## ARTICLE IX.
### Discharge, Injunction, and Release

9.01    **Discharge of Debts.**    Except as otherwise provided in the Plan, completion of the Plan will discharge the Debtor from any and all Claims and Debts, or portions thereof, that arose prior to the Confirmation Date, and which are not to be paid under the terms of the Plan, whether or not: (a) a Proof of Claim based on such Claim or Debt is filed or deemed filed under § 501 of the Code; (b) such claim is an Allowed Claim under § 502 of the Code; or (c) the holder of such Claim accepts the Plan. Distributions under the Plan will the only distributions made upon Claims, and any and all sums owed thereon on excess of such distributions, as of the Petition Date, shall be discharged.

9.02    **Judgments Obtained on Discharged Debts are Void.**    Pursuant to §§ 901(a) and 524(a)(1) of the Code, the Debtor's discharge upon Confirmation of the Plan under § 944(b), voids any judgments at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any Debt discharged, whether or not discharge of such Debt is waived.

9.03    **Discharge Injunction.**    Pursuant to §§ 901(a) and 524(a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under § 944(b) shall operate as an injunction against the commencement or continuation of an action, the employment of a process, or an act taken to collect, recover, or offset as a liability of the Debtor any Debt discharged hereunder, whether or not discharge of such Debt is waived.

9.04    **Releases.**    Upon Confirmation of the Plan, Debtor releases all claims held by Debtor against current Officers, Directors, Commissioners, employees, and other agents, including attorneys, accountants, and other professionals retained or employed by the District, whether in the ordinary course of its operations, or in connection with these chapter 9 proceedings.

## ARTICLE X.
### Miscellaneous Provisions

10.01    **Jurisdiction.**    The Court will retain jurisdiction until implementation of the Plan or the entry of a final decree closing the case. The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Bankruptcy Code, which purposes include, but are not limited to:

    (a)    The classification or allowance of a Claim of any Creditor, and the reexamination of Claims that have been allowed for purposes of voting on the Plan, and the determination of objections, if any, against Claims of creditors.

    (b)    The determination of all causes of action, controversies, disputes, or conflicts involving the right to participate in any Distribution under the Plan, whether or not subject to an action pending as of the Effective Date, between the Debtor and any other party.

    (c)    The correction of any defect, curing of any omission, or the reconciliation or any inconsistency in the Plan, or in the Order of Confirmation, as may be necessary

to carry out the intent and purpose of the Plan.

(d) The modification or amendment of the Plan post-Confirmation, pursuant to the Bankruptcy Rules or Bankruptcy Code.

(e) The enforcement and interpretation of the terms and provisions of the Plan.

(f) The entry of any Order concluding or terminating the case.

(g) The administration of the case, and implementation and consummation of the Plan.

10.02  **Defects, Omissions, and Modifications.**   The Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan, in such a manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided under § 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of holders of Claims. The Plan may be altered or amended before or after the Confirmation date in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holder of Claims, only after further hearing and acceptance of the Plan, as so altered or modified, as provided in § 1126 of the Bankruptcy Code.

10.03  **Interpretation.**   To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, or any other matter, the terms of the Plan shall control.

10.04  **Governing Law.**   Except to the extent that the Bankruptcy Code and other federal laws and regulations may be applicable, the rights and obligations arising under the Plan shall be governed by and enforced in accordance with the laws of the State of Arkansas.

10.05  **Severability.**   Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

10.06  **Revocation and Withdrawal.**   The Debtor reserves the right to revoke and withdraw the Plan at any time on or before Confirmation. If the Debtor revokes or withdraws the Plan pursuant to this Section 10.06, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void, and in such event, nothing contained herein shall constitute or operate as a waiver or release of any Claims by or against Debtor or any other entity or person, or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the District, provided, however, that the provisions of § 362 of the Bankruptcy Code shall remain in full force and effect pending further order of the Bankruptcy Court.

10.07  **Implementation and Cooperation.**   Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan. At any time, the Court may make such orders or give such direction as may be appropriate under §§ 945(a) and 1142(b) of the Code.

EXECUTED this 7th day of September, 2018.

**City of Bryant, Arkansas Municipal Property Owners' Multipurpose Improvement District No. 84**


By: /s/James E. Smith
    James E. Smith
    Williams & Anderson PLC
    111 Center Street, Twenty-Second Floor
    Little Rock, AR 72201
    (501) 372-0800 phone
    (501) 372-6453 fax
    jsmith@williamsanderson.com